IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ALEXANDER COLE, #212472 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:21-CV-26-RAH-KFP |
| | ) | |
| P. JONES (HEAD WARDEN), et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.    INTRODUCTION

Alexander Cole, an indigent state inmate, filed this action under 42 U.S.C. § 1983 challenging actions during his incarceration at Bullock Correctional Facility. Doc. 1. As Defendants, he names Head Warden R. Jones, Captain R. Carter, Lieutenant Robbin, and C.O. I. McCord[1] and sues each Defendant in their official and individual capacities.[2] Docs. 1 at 2, 48.

In his Complaint, Cole alleges that on October 5, 2020, Defendants Robbins and McCord were deliberately indifferent to his medical needs when they failed to protect him

---

[1] Defendants identify themselves this way: Warden Patrice Jones, Captain Ronald Carter, Lieutenant Bryant D. Robbins, and Officer Elijah M. McCord. Doc. 20. The Court will use the Defendants' provided spelling for reference.

[2] Cole made an amendment to his Complaint stating that he was suing Defendants in their individual capacities. To the extent Cole sues Defendants in their official capacities, they are entitled to absolute immunity, and the claims fail because official capacity lawsuits are "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59 (1996).

from his suicide attempt that he alleges was in response to constant threats, intimidation, stabbings, and violence brought against him by other inmates in his dormitory. Doc. 1 at 2–3. Cole further states that Robbins encouraged him to commit suicide and provided him with two razors after he informed Robbins of his suicidal ideations. *Id*. at 5. Additionally, Cole states that Robbins and McCord failed to protect him by forcing him to return to the same dorm after his suicide attempt. *Id*. at 6. Finally, Cole seeks to impose liability on Defendants Warden Richie and Captain Carter on the basis of respondeat superior and asserts an Alabama state law negligence claim against all Defendants.

In response to Cole's pleadings, Defendants filed a Special Report with affidavits and prison documents generally denying all claims against them. Doc. 20. After reviewing Defendants' submissions, the Court ordered Cole to file a response supported by affidavits, statements made under penalty of perjury, and other evidentiary materials. Doc. 23. In his response, Cole moved for an order requiring Defendants to produce the body chart prepared by Mrs. Caldwell on October 5, 2022, and photos taken of him in the hallway, lobby, and health care unit. Doc. 32 at 1. Additionally, Cole alleged that the body charts attached to the Special Report were fabricated. Doc. 32.[3] The Court granted Cole's motion and further ordered Defendants to respond to Cole's claim that the body charts they submitted were fabricated. Doc. 33. In response, Defendants stated that Nurse Caldwell did not prepare a body chart on October 5, no photographs were taken of Cole, and their submitted body charts were not fabricated. Doc. 46 at 1–2. The Court now treats Defendants' Special

---

[3] The body charts submitted by Defendants were signed by Nurse Hill and Nurse Glover, but the incident report indicates body charts were prepared by Nurse Martha Jackson and Nurse Alvetta Glover. Doc. 20-2.

Report and exhibits as a motion for summary judgment and Cole's response (Doc. 45) as an opposition to the motion. Upon consideration of the motion, the Court concludes that summary judgment is due to be DENIED in part and GRANTED in part.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party . . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all evidence in the light most favorable to the nonmovant and draw all justifiable inferences

from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

## III.   FACTS

On October 5, 2020, around 2:30 or 3:00 p.m., Cole presented to the lieutenant shift office and informed Robbins that he was having suicidal thoughts due to constant threats, intimidation, and violence against him by several inmates in E-dormitory. Doc. 1 at 3. Cole also requested to speak to someone from mental health. *Id*. Robbins responded that he did not believe Cole and then fetched a box of orange disposable razors, gave two razors to Cole, and told him to kill himself. *Id*. at 5.

After receiving the razors from Robbins, Cole went to the health care unit and informed McCord that he was having suicidal thoughts and needed to speak with someone from mental health. Doc. 1 at 5. McCord ordered him to go back to the lieutenant shift office. When Cole complied, Robbins told Cole that, if he was going to kill himself, he "needed to hurry up and do it or get out of his face." *Id*. Cole then went back to the health care unit, where McCord advised Cole that Robbins ordered him to "do nothing" for Cole until he had killed himself. After hearing Robbins's order to McCord, Cole sat on the bench in the health care unit lobby and sliced his left arm twice with one of the razors Robbins provided him. *Id*. He then knocked on the health care unit door. When McCord saw Cole bleeding he stated, "You win[,] Cole." *Id*. Officer Mims came to the health care unit lobby, saw Cole bleeding, found the razor he used, and then took Cole to the nurse station.

At the nurse station, Cole was seen by Nurse Caldwell and received six stiches.[4] *Id.* Cole informed Nurse Caldwell that he cut himself because he has been having a lot of trouble from other inmates "visiting violence of stabbing [him] and constantly threatening to cause [him] physical harm" and that Robbins had ordered him to prove he was suicidal when he requested to speak to mental health. Further, Cole expressed that he was alone, afraid, and would rather kill himself than go back to the dormitory where he was being assaulted. *Id.* at 6.

After meeting with Nurse Caldwell, Cole was taken to the mental health building and placed in the crisis cell for approximately 12 hours. Cole was then returned to the same dormitory. Doc. 1 at 6. He stated he would try to kill himself again if he had to go back and be stabbed to death by other inmates. *Id.* Additionally, Cole called his mother and informed her of the threats to his life and safety by several inmates in E-dormitory. Cole's mother called the facility and told Captain McCovery of the violence, threats, and intimidation Cole was enduring. *Id.* After being informed of Cole's concerns, McCovery did nothing to

---

[4] Defendants' submissions contain inconsistencies in the times Cole was initially seen by a nurse and when his assessments occurred. The Special Report describes the October 5 incident report as showing that Cole reported suicidal thoughts to Officer McCord at approximately 4:35 p.m., the nurse conducted a medical assessment at approximately 4:42 p.m., Robbins escorted Cole to the Mental Health Treatment Unit for housing at 5:40 p.m., Robbins entered the Health Care Unit with Cole at 5:42 p.m., and another nurse completed a medical assessment on Cole at 6:35 p.m. Doc. 20 at 5–6. However, the incident report states the incident was reported at 4:36 p.m. and that Nurse Albetta Glover completed a medical assessment at approximately 6:25 p.m. (Doc. 20–2 at 1). The incident report states that the first medical assessment was performed at 4:42 p.m. (Doc. 20-2 at 1), which appears in conflict with the body chart depicting Cole's two cuts on his arm that was completed at 4:37 p.m. (Doc. 20-2 at 3). Yet, the incident report states that it was not until 4:36 p.m. that Lt. Robbins was informed of the incident by Officer McCord on the radio. Doc. 20-2 at 1. These apparent discrepancies prevent the Court from discerning the precise timing of these events, but the minutia of this timeline is immaterial to the issues the Court must decide on summary judgment.

protect Cole.[5] Sometime before May 24, 2021, Cole was transferred to Limestone Correctional Facility. Doc. 17.

## IV.   DISCUSSION

### A.   Eighth Amendment Claims

Cole alleges Eighth Amendment deliberate indifference claims against Defendants Robbins and McCord. In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court determined that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. "To establish a deliberate indifference claim, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *Roy v. Ivy*, 53 F.4th 1338, 1346–47 (11th Cir. 2022) (citation omitted).

A claim for deliberate indifference has both an objective and a subjective component. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000). The objective component requires a plaintiff to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (citation and internal quotation marks omitted). After establishing the objective component, a plaintiff must then establish the subjective component by showing "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by

---

[5] Captain McCovery is not named as a Defendant.

6

conduct that is more than [gross] negligence." *Goebert*, 510 F.3d at 1327 (citation omitted).[6]

"In a prison suicide case, deliberate indifference requires that the defendant deliberately disregard a strong likelihood rather than a mere possibility that the self-infliction of harm will occur. The mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005). (citations and internal quotations omitted). "[I]n this circuit a finding of deliberate indifference requires that officials have notice of the suicidal tendency of *the* individual whose rights are at issue in order to be held liable for the suicide of that individual." *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994). "Absent knowledge of a detainee's suicidal tendencies, the cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference." *Popham v. City of Talladega,* 908 F.2d 1561, 1564 (11th Cir. 1990). Additionally, in a deliberate indifference case, "[e]ach individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).

---

[6] There is uncertainty in the Eleventh Circuit on whether the standard is "more than mere negligence" or "more than gross negligence." *Johnson v. Lewis*, 83 F.4th 1319 n.2 (11th Cir. 2023) (comparing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999), with *Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)); *see Brooks v. Miller*, 78 F.4th 1267, 1284 (11th Cir. 2023) ("As of the time we issue this opinion, arguably, some uncertainty exists in our precedent as to whether the standard is 'more than mere negligence' or 'more than gross negligence.'"). Because the Court finds that Robbins's and McCord's conduct can reasonably be viewed as more than gross negligence, the Court applies this higher standard.

### 1.  Cole's Suicide Threats

#### a.  Serious Medical Need

As discussed above, to establish a deliberate indifference claim, Cole must first demonstrate an objectively substantial risk of serious harm existed. In his Complaint, Cole alleges he was suicidal at the time of the incident and needed mental health treatment. Doc. 1 at 3. Defendants do not refute Cole's assertion that he was suicidal and that this constituted a serious medical need. Although Defendants state summary judgment is proper because Cole did not satisfy the objective element necessary to establish a deliberate indifference claim, they fail to provide any facts or analysis to argue this point. Doc. 20 at 10–11.

"Under the Eighth Amendment, prisoners have a right to receive medical treatment for illness and injuries, which encompasses a right to psychiatric and mental health care and a right to be protected from self-inflicted injuries, including suicide." *Hofer v. City of Auburn, Ala.,* 155 F. Supp. 2d 1308, 1312–13 (M.D. Ala. 2001); *see Steele v. Shah*, 87 F.3d 1266, 1269 (11th Cir. 1996) ("[I]t is established that psychiatric needs can constitute serious medical needs and that the quality of psychiatric care one receives can be so substantial a deviation from accepted standards as to evidence deliberate indifference to those serious psychiatric needs").

Here, Cole alleges that he experienced suicidal thoughts during the time leading up to slicing his arm. Doc. 1 at 5. Cole was "alone, afraid[,] and would rather kill [himself] by slicing [himself]" than go back to the same dormitory with the inmates who previously assaulted and stabbed him. *Id*. at 6. In viewing the facts in a light most favorable to Cole,

the Court finds Cole sufficiently demonstrated that he was suicidal at the time leading up to and during the incident. "A serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills," and "[a] psychological or psychiatric condition can be as serious as any physical pathology or injury, especially when it results in suicidal tendencies." *Partridge v. Two Unknown Police Officers of City of Houston, Tex.*, 791 F.2d 1182, 1187 (5th Cir. 1986). Thus, the Court finds that Cole's suicidal mental state constituted a serious medical need for mental health treatment, and Cole's claim that he had a substantial risk of serious harm due to his suicidal state satisfies the objective prong of the deliberate indifference test.

### b. Awareness of Serious Medical Need and Disregard of That Risk by Conduct That is More Than Gross Negligence

Next, Cole must show Defendants were aware of his suicidal ideations and serious need for medical attention. As discussed above, "[t]he deliberate indifference standard is met only if there were a strong likelihood, rather than a mere possibility, that self-infliction of harm would result." *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quotation omitted). A strong likelihood of suicide does not exist, and therefore the awareness prong of *Estelle's* deliberate indifference test is not met, unless "(1) the inmate previously had threatened or attempted suicide; (2) that prior threat or attempt was known to the defendants; (3) the prior threat or attempt was somewhat recent; and[] (4) the prior threat or attempt appeared genuine." *Greffey v. State of Ala. Dep't of Corr.*, 996 F. Supp. 1368, 1381–82 (N.D. Ala. 1998). As stated above, Defendant Robbins and McCord "must be judged separately and on the basis of what that person knows." *Burnette*, 533 F.3d at 1331.

In addition to the subjective awareness of the relevant risk, Cole must demonstrate that Robbins and McCord disregarded the risk by conduct that is more than gross negligence. *See McElligot*, 182 F.3d 1248 at 1255.

### i.      Lieutenant Robbins

Cole alleges Robbins was aware of his serious mental health need of being suicidal. Robbins generally denies all of Cole's allegations. Doc. 20 at 12–13. To decide whether Cole sufficiently demonstrated that the awareness prong of *Estelle's* deliberate indifference test is met for Robbins, the Court considers the four factors listed above. First, Cole previously threatened suicide when he first went to the shift office and informed Robbins he was suicidal. Doc. 1 at 3, 5. Second, that prior threat was known to Robbins because Cole specifically told Robbins about his suicidal ideations, and Robbins relayed some information about Cole's suicide threat to McCord. Third, the prior threat was recent, as Cole first informed Robbins about being suicidal around 2:30 or 3:00 p.m., and the incident report reflects that he was seen by a nurse after he sliced his arm at approximately 4:42 p.m. Doc. 20–2 at 1.

The fourth factor requires that Cole's prior threat appeared genuine to Robbins, which means it must "have been free of indicia of manipulative sham or pretense—in order to impart sufficient warning to the prison officials." *Greffey*, 996 F. Supp. at 1383. The fact that Cole alleges he attempted to kill himself when he sliced his arm weighs in favor of a finding that his threats were genuine. Again, Defendants do not dispute that Cole made a genuine suicide attempt, that his threats were genuine, or that Robbins was aware of Cole's suicidal mental state. Even if Defendants disputed that Cole's suicide threats were genuine,

the genuineness of his threats is best resolved by the fact-finder. *See Greffey*, 996 F. Supp. at 1383.

When analyzing the likelihood of suicide, courts look at the inmate's environment at the time the suicide or the attempt occurred and what tools he had that could make suicide likely. *See Gish v. Thomas*, 516 F.3d 952, 954–955 (11th Cir. 2008) ("To be deliberately indifferent to a strong likelihood that the prisoner will commit suicide, the official must be subjectively aware that the *combination* of the prisoner's suicidal tendencies and the feasibility of suicide in the context of the prisoner's surroundings creates a strong likelihood that the prisoner will commit suicide."); *see also Turner v. Phillips*, 547 F. Supp. 3d 1188, 1204 (N.D. Fla. 2021), *aff'd*, No. 21-12370, 2022 WL 458238 (11th Cir. Feb. 15, 2022) (finding jail officers were aware of an inmate's genuine suicide attempt, or at least preparation for an attempt, because they saw him tying his pants on the top of the door of a shower cell, one of the officers described the pants as a noose, an officer overheard the inmate talking to another officer about hanging himself, and the same officer who overheard the conversation asked the inmate if he was planning to harm himself); *Allen v. Freeman*, No. CV 110-022, 2013 WL 3356040, at *10 (S.D. Ga. July 3, 2013) ("The shower door support bar was located at the height of six feet and ten inches, which was clearly sufficient for [the inmate] to attempt suicide. The fact that the sheet was tied down strengthens the likelihood of suicide. In the jail setting and at that specific location, a tied-down sheet is an obvious instrument of suicide.").

Similarly, here, Cole told Robbins directly that he intended to kill himself, and Robbins discussed Cole's suicidal ideations with McCord. Robbins made no effort to

protect Cole from harming himself or to prevent him from acting on his suicidal threats. Additionally, Robbins provided Cole with two razors, tools that are obvious instruments of suicide. This affirmative action created a strong likelihood—not just a mere possibility—that Cole would at least attempt suicide. Accordingly, the evidence shows that a reasonable jury could find that Robbins was aware that a strong likelihood of suicide existed when Cole told Robbins he was suicidal and when Robbins provided Cole with the tools to kill himself.

Because the Court finds a reasonable jury could conclude that Robbins had the subjective awareness of Cole's suicidal ideations and that a strong likelihood of self-inflicted harm existed, the Court considers whether Robbins disregarded this risk. Again, deliberate indifference requires that a defendant intentionally failed to provide medical care. *See McElligott*, 182 F.3d at 1255. "Failure to provide basic psychiatric and mental health care states a claim of deliberate indifference to the serious medical needs of prisoners." *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986). "Even if an official has notice of a strong likelihood that a prisoner will attempt to commit suicide, the prisoner must prove that the preventive measures taken were so inadequate as to be deliberately indifferent to the risk." *Hofer,* 155 F. Supp. 2d at 1313.

Here, Robbins gave razors to Cole after Cole said he was suicidal and Robbins told him to kill himself. Doc. 1 at 5. For purposes of summary judgment, Cole has sufficiently demonstrated a strong likelihood that he would attempt suicide as a result of Robbins's actions of providing the razors, telling Cole to kill himself, and failing to aid Cole in any way, including his refusal to get the medical help Cole requested. Based on these facts, a

reasonable jury could find that Robbins was aware of Cole's suicidal ideations, Robbins was aware of the strong likelihood that Cole would act on these ideations, and Robbins disregarded the risk.

Next, the Court must determine whether Robbins disregarded the risk with conduct that amounted to more than gross negligence. Although the Eleventh Circuit has not yet made clear whether an inmate like Cole must demonstrate that Robbins acted with more than "mere negligence"[7] or more than "gross negligence," the Court applies the more-than-gross-negligence standard here because Cole's claim meets this more strenuous standard, making the uncertainty inconsequential to the Court's analysis. Under the more-than-gross-negligence standard, "deliberate indifference is *not* a constitutionalized version of common-law negligence." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (citation and quotation marks omitted). "Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. Deliberate indifference "is in fact akin to subjective recklessness as used in the criminal law." *Id*. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious

---

[7] For a plaintiff to plead an Eighth Amendment violation under the more-than-mere-negligence standard a plaintiff must demonstrate that a defendant's conduct constituted "'obduracy and wantonness, not inadvertence or error in good faith.'" *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[W]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (quotation marks and citation omitted).

harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

The evidence presented, specifically, that Robbins responded to Cole by providing him with razors and verbally encouraging his suicide, shocks the conscience. The act of providing razors after being told of Cole's suicidal ideations alone constitutes more than gross negligence. Additionally, there were obvious steps Robbins could have taken to protect Cole, such as taking him to a medical provider and, of course, refraining from giving him razors. *See McElligott*, 182 F.3d at 1255 ("[D]eliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment").

Thus, the Court finds a reasonable jury could conclude Robbins acted with deliberate indifference through conduct that amounted to more than gross negligence when, in response to Cole's statements regarding suicide, he provided Cole with the razors, encouraged him to kill himself, left him unsupervised, and failed to take him to a medical provider.

## ii.    McCord

Cole also alleges that McCord acted with deliberate indifference to his suicidal ideations. Doc. 1 at 2, 5. McCord generally denies Cole's allegations. As with Robbins, Cole must also demonstrate that McCord was subjectively aware of his serious medical need but disregarded that risk. The awareness prong of *Estelle's* test requires Cole to demonstrate that McCord was aware of a strong likelihood that Cole would attempt to commit suicide. *Greffey*, 996 F. Supp. at 1381–82.

The strong-likelihood analysis and conclusion are the same for McCord as for Robbins except for the second factor of whether McCord was aware of Cole's suicide threats. Cole alleges, and McCord does not dispute, that McCord was aware of the suicide threats because Cole specifically told McCord he was suicidal and needed to speak with someone from mental health. Doc. 1 at 5. Further, McCord informed Cole that Robbins told him not to do anything to help Cole until he killed himself. This indicates that McCord was aware of Cole's suicidal ideations and that Robbins and McCord discussed what to do after Cole killed himself. Viewing this evidence in a light most favorable to Cole, a reasonable jury could find that McCord was aware of the strong likelihood that Cole would attempt to commit suicide as a result of McCord's failure to get Cole medical help.

Next, the Court must determine whether Cole demonstrated that McCord disregarded Cole's serious mental health risk. Although McCord had knowledge that Cole was suicidal, he failed to protect Cole from a suicide attempt or to take preventive steps before Cole sliced his arm, ultimately disregarding the risk. The Court must next determine if McCord disregarded the risk with conduct that amounts to more than gross negligence. The question before the Court is whether McCord's approach to the treatment of Cole's suicidal ideations and threats "is so reckless—so conscious–shocking—that it violates the Constitution." *See Hoffer*, 973 F.3d at 1271. Cole went specifically to McCord, told him about his suicidal ideations, and asked to speak with someone from the mental health unit. With that information, McCord did nothing except order Cole back to the lieutenant shift office; he did not refer him for any medical care. Docs. 1 at 5, 20–2 at 1. Cole complied and then returned to the mental health care unit lobby with no supervision, armed with the

razors from Robbins. Doc. 1 at 5. Viewed in the light most favorable to Cole, making all inferences in his favor, McCord then heeded Robbins orders to "do nothing" until Cole harmed himself. Cole did just that and cut himself twice. Cole had to knock on the mental health unit door and show McCord his bleeding arm before he was seen by a nurse. "This is [] a case where the prison official[] utterly failed to treat [Cole's] medical condition." *See Muhammad v. Jones*, No. 22-10801, 2022 WL 17958940, at *2 (11th Cir. Dec. 27, 2022). McCord caused a delay of treatment for Cole's serious medical need, it was apparent that the delay would detrimentally exacerbate the likelihood for suicide, the delay did seriously exacerbate the medical need as Cole attempted suicide during the delay, and there was no medical justification for delaying treatment. *See Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1235 (11th Cir. 2010) ("Deliberate indifference can include the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified." (citation and quotation marks omitted)); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) ("[I]t may be that deliberately indifferent delay, no matter how brief, would render defendants liable as if they had inflicted the pain themselves."). Thus, McCord was aware of Cole's suicide risk and a reasonable jury could find that McCord acted recklessly when he intentionally disregarded that risk by denying Cole care. *Id*. ("When prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference.").

While it is a closer call than Robbins's conduct on whether McCord's conduct was more than grossly negligent, the Court finds a reasonable jury could conclude that McCord's failure to take any action to protect Cole from his suicide attempt satisfies the more-than-gross-negligence standard and reasonably constitutes deliberate indifference.

### iii.    Qualified Immunity

Robbins and McCord maintain that qualified immunity protects them from liability. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Eleventh Circuit has established a two-step analysis to determine whether qualified immunity applies. *See Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983) (citations omitted). First, the defendant government official must show he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The burden then shifts to the plaintiff to demonstrate (1) the defendant violated a constitutional right (2) that is clearly established. *Zeigler*, 716 F.2d at 849. "The test is conjunctive, and if a plaintiff fails either prong of the qualified immunity analysis, his claim is barred." *Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023). If a plaintiff cannot establish both elements, the defendant is entitled to qualified immunity,

and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012).

As outlined above, for a qualified immunity defense to apply, a defendant must first establish that he was acting within the scope of his discretionary authority. *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016). This inquiry requires a high-level, general evaluation of "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Hughes v. Locure*, No. 3:22-CV-312-RAH, 2023 WL 2457367, at *6 (M.D. Ala. Mar. 10, 2023) (internal quotations and citation omitted). Courts making this determination disregard the alleged unlawful act and instead consider "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Mikko v. City of Atlanta, Georgia*, 857 F.3d 1136, 1144 (11th Cir. 2017) (internal quotation marks and citations omitted).

Here, Defendants assert their acts and omissions, as alleged by Cole, consist of discretionary functions. Doc. 20 at 13. Both parties agree that Defendants McCord and Robbins were acting as prison officials when they responded and failed to respond to Cole's suicide threats. *Id*; Doc. 44 at 1. Thus, Defendants McCord and Robbins were acting within the scope of their discretionary authority when the alleged wrongful acts occurred.

Next, the burden shifts to Cole to demonstrate Defendants violated a constitutional right that was clearly established at the time of the incident. As discussed above, there is a genuine dispute of material fact as to whether Defendants violated Cole's Eighth

Amendment rights. Next, the Court must decide whether these rights were clearly established.

As early as 1990, the Eleventh Circuit held that a reasonable person, with knowledge of an inmate's suicidal threats, would have known that failing to take steps to prevent the suicide before an attempt was made—and, even worse, providing tools to carry it out—could violate the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Greason*, 891 F. 2d at 835–836. At the time of the incident, "decisional precedent [] clearly established that a jailer acts with deliberate indifference if he has subjective knowledge of a strong likelihood that an inmate would attempt suicide and deliberately fails to take any action to prevent that inmate's suicide." *See Turner*, 547 F. Supp. 3d 1188 at 1206–07 ("[T]he broader principle that it is unconstitutional to place a known suicidal inmate in a cell that contains items that the inmate could use to harm himself is clearly established—and just plain common sense"); *see also McElligott,* 182 F.3d at 1257 ("A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness."); *Greason*, 891 F.2d at 835–36 ("Where prison personnel directly responsible for inmate care have knowledge that an inmate has attempted, or even threatened, suicide, their failure to take steps to prevent that inmate from committing suicide can amount to deliberate indifference.") (citation omitted). Further, "[p]rison guards who display deliberate indifference to the serious medical and psychiatric needs of a prisoner, or deliberate indifference to a 'strong likelihood' that a

prisoner will take his own life, violate the Eighth Amendment and may be liable under section 1983." *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396 (quoting *Estelle*, 429 U.S. at 104–105). Thus, this Eighth Amendment right in this context was clearly established at the time of the incident and Robbins and McCord violated that right. Consequently, the defense of qualified immunity fails here.

The undersigned recommends that summary judgment on Cole's deliberate indifference claim regarding his suicide threat against Robbins and McCord be denied.

### 2.     Cole's Return to E-Dormitory

Cole alleges Defendants failed to protect him, following his suicide attempt, when they returned him to his same dormitory where "several inmates were visiting violence and threats of violence and intimidation on [him]." Doc. 1 at 6. To the extent Cole asserts a conditions-of-confinement claim based on Defendant's failure to protect him from other inmates in his dormitory, that claim cannot survive summary judgment.[8] "A conditions-of-confinement claim has both objective and subjective components. The objective component requires that the plaintiff show that the condition is sufficiently serious to violate the Eighth Amendment, meaning it is extreme and poses an unreasonable risk of serious damage to his future health or safety." *Coleman v. McGhee*, No. 21-12557, 2022 WL 217578, at *2 (11th Cir. Jan. 25, 2022) (citing *Chandler v. Crosby*, 379 F.3d 1278, 1289–91 (11th Cir. 2004)). The Supreme Court held:

---

[8] Failure-to-protect claims are reviewed under the same standard as conditions-of-confinement claims. *Mosley v. Zachary*, 966 F.3d 1265, 1270 (11th Cir. 2020). And the culpable state of mind for both claims is deliberate indifference. *Id.*

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Cole is correct that Defendants had an "Eighth Amendment duty to protect [him] from the violence of other prisoners," but "constitutional liability for prison officials does not arise simply because an injury to one prisoner occurred at the hands of another." *Coleman v. McGhee*, No. 21-12557, 2022 WL 217578, at *2 (11th Cir. Jan. 25, 2022) (quotation marks and citation omitted). And Cole "must present more than verbal taunts . . . [h]owever distressing to allege an Eighth Amendment violation." *Id.*; *see also Hernandez v. Fla. Dept. of Corr.*, 281 Fed. App'x. 862, 866 (11th Cir. 2008) (stating that mere verbal threats, without more, are insufficient to support a failure-to-protect claim). For Cole to succeed on this claim, he would need to establish that a "substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond[ ] reasonably to the risk." *Mosley*, 966 F.3d at 1267–68 (quotation marks and citation omitted). "Successful deliberate-indifference claims will generally require some further reason[s]—beyond the plaintiff having informed the defendant officers of the threat—that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility, of serious harm." *Id.* at 1271.

The Eleventh Circuit has rejected an inmate's argument that "if a prisoner says he is in fear for his life, the prison official must place the prisoner in protective custody until an investigation is completed" because "anything less" is "objectively unreasonable." *Id.*

For example, if Cole had run up to Robbins or McCord "while being chased by his shiv-wielding cellmate who was yelling, 'I will kill you,'" and Robbins or McCord were aware that "the cellmate had a history of stabbing other prisoners, it may be unreasonable" for Robbins and McCord to simply tell Cole, "'I've got your back,' 'We're looking into moving your cellmate,' and 'Go back to your cell.'" *Id*. In *Mosley*, a jail official was informed by the plaintiff inmate and a neighboring inmate that another inmate threatened to kill the plaintiff because he believed the plaintiff snitched on him and ruined his chances of parole. The jail official informed the plaintiff that she had his back and told him she would look into moving the inmate who threatened him. Moments after the threat was reported, the other inmate attacked and assaulted the plaintiff. *Id*. at 1269. The court held that the jail official acted reasonably because she was available to talk to the plaintiff about the threat, told him she had his back, would investigate the threat, would look into moving the inmate who threatened him, and put the plaintiff into a highly monitored prison environment called "Count time" where the inmates would be separated. *Id*. at 1275.

Here, Cole did not provide the jail officials with the specific names of any violent or threatening inmates, the specific instances when he was abused or threatened, or the context around any threat he received or abuse he suffered to substantiate it. Cole offers no evidence—testimony or otherwise—of any specific instance of violence against him (other than what he performed on himself), and he has offered no evidence of prolific violence in his dormitory. Doc. 1 at 5; *see Nelson v. Tompkins*, 89 F.4th 1289, 1296–97 (11th Cir. 2024) ("Proof of the attacker's generally problematic nature or propensity to misbehave will not suffice to prove that he posed a substantial risk of serious harm to the detainee.")

(citation and internal quotation marks omitted). Even though Defendants did not take any action in response to Cole's expressed general concerns about threats in the dormitory, Cole's concerns were too vague to establish a strong likelihood of substantial risk. "The evidence must establish a greater degree of specificity in the risk of harm posed to [the victim]." *Id*. Without more, Cole's claim only amounts to a mere possibility of substantial harm from unknown persons. Without a showing of a strong likelihood of an objectively substantial risk, Defendants cannot be said to have known of a substantial risk and cannot be found to have acted unreasonably.

Consequently, Cole's "conclusory allegations [are] not sufficient evidence to oppose a motion for summary judgment." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). The undersigned recommends summary judgment be granted on Cole's failure to protect claim based on his return to E-dormitory.

### B.    Respondeat Superior

Cole appears to assert supervisory liability claims against Defendants Warden Jones and Captain Carter[9],[10] asserting they are liable to him in their supervisory position for the actions or omissions of their subordinates based on a theory of respondeat superior. The

---

[9] In the Complaint, Cole alleges that his mother called Captain McCovery and informed him about the violence, threats, and intimidation against Cole. Doc. 1 at 6. In the event Cole was attempting to allege a respondeat superior claim against McCovery that claim cannot survive summary judgment. First, Cole does not name McCovery as a defendant. Second, Cole alleges no connection between McCovery and the Defendants. Third, Cole does not allege or present any evidence that there was a history of widespread abuse in the jail. He only states that his mother told McCovery that he was experiencing this violence at some point before the incident at issue occurred. Accordingly, this claim would, if asserted, fail.

[10] Defendant Jones testified about her knowledge of the October 5, 2020, incident based completely on her review of Cole's Complaint and the incident report. Doc. 20–1 at 1–2. Defendant Carter denies any knowledge of or involvement in the incident. Doc. 20–5. Cole alleges only that Jones and Carter were made aware of the incident and did nothing to intervene. Doc. 45 at 3.

law is well established that supervisory officials cannot be held liable in § 1983 actions under any theory of respondeat superior or vicarious liability. *See Belcher,* 30 F.3d at 1396–97 (11th Cir. 1994). As explained by the United States Supreme Court:

> [G]overnment officials may not be held liable for the unconstitutional conduct of their subordinates [or co-workers] under the theory of respondeat superior [or vicarious liability] . . . . A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed [alongside,] by or under him, in the discharge of his official duties. Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (internal quotation marks, citation, and parentheses omitted). Thus, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal,* 556 U.S. at 677. On this record, it is clear that Jones and Carter did not participate or have direct involvement in the underlying events that occurred on October 5, 2020. Docs. 1, 20-1, 20-2 at 1.

To establish a sufficient causal connection without direct participation, a plaintiff must present sufficient evidence of either "a history of widespread abuse [that] put[] [the defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so," "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (internal punctuation and

citations omitted). After careful review of the verified pleading and evidentiary materials, the Court concludes that Cole fails to present any such evidence. Therefore, the undersigned recommends summary judgment be granted in favor of Defendants Jones and Carter on Cole's claims based on respondeat superior or vicarious liability.

### C.      Alabama State Law Negligence Claim

Cole also alleges a negligence claim. Doc. 1 at 2. Cole does not identify specific Defendants or describe particular conduct for this claim. Defendants address this claim simply by asserting an absolute immunity defense. "The Alabama Supreme Court explained that under Article I, § 14, the *only* exceptions to a sheriff's immunity from suit are actions brought to *enjoin* the sheriff's conduct." *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) (citing *Alexander v. Hatfield,* 652 So. 2d 1142, 1143 (Ala. 1994)). The Alabama Legislature extended the scope of state sovereign immunity to jailers by passing the Jailer Liability Protection Act in 2011. *See* Ala. Code §§ 14-5-1 & 36-22-3(b). Consequently, immunity is applicable to Defendants.

Regardless of what allegations Cole intended to include in his negligence claims, because Defendants are being sued for damages—not to enjoin their conduct—no exception to Section 14 is applicable, and Defendants are entitled to sovereign immunity from this state law claim. The undersigned recommends summary judgment be granted on Cole's state law negligence claim.

### V.      CONCLUSION

Accordingly, the Magistrate Judge RECOMMENDS as follows:

1.      Defendants' Motion for Summary Judgment (Doc. 20) be GRANTED in part and DENIED in part.

2.      Defendants' Motion for Summary Judgment be GRANTED on Cole's claims for money damages against Defendants in their official capacities because Defendants are entitled to absolute immunity from such damages;

3.      Defendants' Motion for Summary Judgment be DENIED on Cole's claims against Defendants McCord and Robbins in their individual capacities for deliberate indifference based on Cole's suicide threats;

4.      Defendants' Motion for Summary Judgment be GRANTED on Cole's claims against Defendants McCord and Robbins in their individual capacities for deliberate indifference based on Cole's return to E-dormitory;

5.      Defendants' Motion for Summary Judgment be GRANTED on Cole's claims against Defendants Jones and Carter based on respondeat superior or vicarious liability;

6.      Defendants' Motion for Summary Judgment be GRANTED on Cole's negligence claim because Defendants are immune;

7.      This case be set for a jury trial before the District Judge on Cole's surviving deliberate indifference claim against Defendants McCord and Robbins; and

8.      This case be referred back to the undersigned Magistrate Judge for mediation of Cole's surviving deliberate indifference claim against Defendants McCord and Robbins.

Further, it is ORDERED that by **March 27, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or

general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3–1.

DONE this 13th day of March, 2024.


/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE